**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

NATIONWIDE MUTUAL INSURANCE
COMPANY,

        Plaintiff,

vs.                                      No. CIV 15-0199 JB/KBM

C.R. GURULE, INC., CLYDE GURULE,
DARLENE GURULE, DEIDRA GURULE and
DAVE ELROY ROMERO, JR., as personal
representative of the estate of Christian Gurule,

        Defendants.

**MEMORANDUM OPINION AND ORDER**

**THIS MATTER** comes before the Court on Defendants C.R. Gurule, Inc., Clyde Gurule,

Darlene Gurule, and the Estate of Christian Gurule's Motion for Dismissal or Stay, filed May 19,

2015 (Doc. 4)("Motion"). The Court held a hearing on the Motion on July 29, 2015. The

primary issues are: (i) whether the Court should retain jurisdiction over a declaratory judgment

action asking the Court to determine whether an insurance policy covers the accident that killed

Christian Gurule; and (ii) whether the Court should abstain from hearing the case under the

abstention doctrines announced in Younger v. Harris, 401 U.S. 37 (1971)("Younger"), and in

Colorado River Water Conservation District v. United States, 424 U.S. 800 (1976)("Colorado

River"). The Court hesitates to decline federal jurisdiction when a plaintiff properly brings a

case before the Court, and the Younger and Colorado River doctrines do not require the Court to

abstain. Under the particular and unique circumstances of the case, however, the Court will

nonetheless grant the Gurules' Motion and decline jurisdiction, however, because the factors the

Tenth Circuit announced in State Farm Fire and Casualty Co. v. Mhoon, 31 F.3d 979 (10th Cir.

1994)(White, J.)("Mhoon"), all suggest that the Court should decline to exercise federal jurisdiction.

## FACTUAL BACKGROUND

Plaintiff Nationwide Mutual Insurance Company issued an insurance policy, number 7201351200 ("policy"), to Defendant C.R. Gurule, Inc. for the period of November 10, 2012 through November 10, 2013.   See Complaint for Declaratory Judgment ¶¶ 1-5, at 1-2, filed March 9, 2015 (Doc. 1).   The Gurules reside in Penasco, New Mexico -- near San Miguel County.   See Transcript of Motion Proceedings before the Court at 43:19-22 (Gorman)(taken July 29, 2015)("Tr.").   Clyde and Darlene Gurule own C.R. Gurule, Inc., and their son Christian Gurule works there as an employee.   See Complaint at 2-3.[1]   On May 13, 2013, Anthony Chavez' vehicle struck Christian Gurule's vehicle -- a 2007 Volkswagen Jetta -- in Bernalillo County, New Mexico.   See Complaint ¶ 6, at 2; Motion at 2.   The car crash killed Christian Gurule.   See Complaint ¶ 6, at 2; Motion at 2.   Christian, age twenty-four, "owned the Jetta and insured it through Sentry Insurance at the time of the accident."   Complaint ¶ 7, at 2.   Nevada General Insurance Company insured Chavez.   See Complaint ¶ 8, at 2.

The Gurules owned an insurance policy through The Hartford Casualty Insurance Company.   See Complaint ¶ 9, at 2; Motion at 2.   On December 18, 2013, the Gurules filed a Complaint for Wrongful Death in the County of San Miguel, Fourth Judicial District Court, State of New Mexico.   See Motion at 2; Gurule v. Nationwide Mutual Ins. Co., D-412-CV-2013-00502 (4th Jud. Dist. Ct., San Miguel Cnty., N.M.)(Baca, J.).[2]   They joined both Chavez and The

---

[1] The Court will refer to Clyde and Darlene Gurule as the Gurules.

[2] The County seat of San Miguel County is in Las Vegas, New Mexico.   The Honorable Gerald Baca, New Mexico District Court Judge, sits in Las Vegas, New Mexico.

Hartford, but the state court subsequently dismissed The Hartford.  See Motion at 2-3.  The Hartford's uninsured motorist coverage did not fully compensate the Gurules for Christian's death, so they sought underinsured motorist benefits under the Nationwide Insurance policy.  See Complaint ¶ 10, at 2.

The Gurules therefore made a claim upon Nationwide Insurance for uninsured motorist coverage under C.R. Gurule Inc.'s policy on December 23, 2014.  See Complaint ¶ 10, at 2.  Specifically, they asserted that "Christian Gurule was a Class I insured under the policy and that two vehicles were insured under the policy, entitl[ing] Defendants to stacked coverage of $2,000,000."  Complaint ¶ 10, at 2.  Nationwide Insurance responded in early January, asking for additional information.  See Tr. at 8:1-3 (Gorman).  More than one month later, Nationwide Insurance requested additional time to evaluate the claim, and promised to respond by March 27, 2015 or earlier.  See Tr. at 8:12-17 (Gorman); Letter from Haley Crawford, Nationwide Mutual Insurance Company Agent, to David Garcia at 1 (dated February 23, 2015), filed May 19, 2015 (Doc. 4)("Nationwide Letter").  Nationwide Insurance never sent the Gurules any further correspondence regarding the policy claim and instead filed a Complaint in federal court.  See Complaint ¶ 1, at 1.

## PROCEDURAL BACKGROUND

On March 9, 2015, Nationwide Insurance filed this action seeking a declaratory judgment that "Defendants are not entitled to uninsured motorist coverage under the policy."  Complaint ¶ 10, at 3.  Nationwide waited six weeks to serve the Gurules with the Complaint.  See Summons Issued as to C.R. Gurule, Inc., Clyde Gurule, Darlene Gurule, Deidra Gurule, and Dave Romero, filed April 21, 2015.  Nationwide Insurance asserts that the Court's basis for subject-matter jurisdiction is diversity of citizenship pursuant to 28 U.S.C. § 1332.  See Complaint ¶ 3, at 1.

Nationwide Insurance contends that it rejected the Gurules' claim because "only one vehicle was insured under the applicable policy."  Complaint ¶ 11, at 2-3.

On March 11, 2015, after realizing that Nationwide Insurance filed a federal lawsuit without informing them of their claim's status, the Gurules filed an amended complaint in state court, adding Nationwide Insurance as a defendant.  See Motion at 4.  They alleged that "Nationwide breached its contract by failing to pay under the contract's uninsured motorist coverage clause and violated the New Mexico Unfair Trade Practices Act, Fraud Act and Insurance Code by failing to investigate and respond in good faith to the Gurules' demand for coverage."  Motion at 4.  On April 20, 2015, Nationwide Insurance filed in state court: (i) a Motion to Dismiss the Gurules' Claims for Declaratory Judgment, Breach of Contract and Trade Practices and Fraud Act Violations ("Motion to Dismiss"); and (ii) a Motion to Strike Plaintiffs' First Amended Complaint for Wrongful Death and Declaratory Judgment ("Motion to Strike). See Response at 3.  Nationwide Insurance's Motion to Dismiss aims to dismiss the Gurules' declaratory judgment action seeking a declaration that the policy covers Christian Gurule -- the same issue now before the Court.

The Gurules then filed this Motion, requesting "that the Court dismiss or stay" the declaratory judgment action, and "defer to the case long pending in the Fourth Judicial District of the State of New Mexico."  Motion at 1.  They argue that the declaratory judgment action involves a state law issue that is already being litigated in the lawsuit filed in state district court on December 18, 2013.  See Motion at 1.  They ask the Court to "exercise its discretion to decline jurisdiction," because "it turns on an issue of state law better resolved by the New Mexico state court, which already has in front of it all of the other claims related to the wrongful death of Christian Gurule."  Motion at 1-2.  Finally, the Gurules state that the abstention

doctrines in <u>Younger</u> and <u>Colorado River</u> compel the Court to decline jurisdiction.  <u>See</u> Motion at 12-14.

Nationwide Insurance responded to the Gurules' Motion on June 3, 2015 (Doc. 12)("Response").  It contends that "nothing in the Declaratory Judgment Act prohibits a court from deciding a purely legal question concerning contract interpretation which arises in the context of a controversy presenting other factual issues."  Response at 4.  Nationwide Insurance agrees with the Gurules that the Tenth Circuit's decision in <u>Mhoon</u>, which describes the factors courts should consider in deciding whether to hear declaratory judgment actions, controls the Court's decision.  <u>See</u> Response at 4-5.  Nationwide Insurance contends that these factors weigh in favor of the Court finding that it has jurisdiction.  <u>See</u> Response at 5-6.  Additionally, Nationwide Insurance argues that the Supreme Court's abstention doctrines, as stated in <u>Younger</u> and <u>Colorado River</u>, do not compel the Court to decline jurisdiction.  <u>See</u> Response at 12-14.

The Gurules replied to Nationwide's Response on June 17, 2015.  <u>See</u> Defendants C.R. Gurule, Inc., Clyde Gurule, Darlene Gurule, and the Estate of Christian Gurule's Reply to Nationwide Mutual Insurance Company's Response to Motion for Dismissal or Stay (Doc. 12), filed June 17, 2015 (Doc. 14)("Reply").  The Gurules emphasize that the third <u>Mhoon</u> factor -- whether the plaintiff engaged in procedural fencing -- indicates that the Court should abstain from exercising jurisdiction, because "Nationwide has engaged in procedural fencing and is using this Declaratory Judgment action to provide an arena for a race to *res judicata*."  Reply at 2.  They assert that "[i]t was apparent to Nationwide that the Gurules would add Nationwide as a party to the state court action if the [insurance policy] claim was denied."  Reply at 3.  They argue that, to avoid being named as a defendant in the state law judgment, Nationwide Insurance waited "nearly three weeks" to inform the Gurules that Nationwide denied their insurance claim,

so that Nationwide could file a case in federal court.  Reply at 5.

The Court held a hearing on the Motion on July 29, 2015.  The parties primarily discussed the five <u>Mhoon</u> factors.  The discussions first revealed that the case involved "factual issues that may require a trial," largely "because the language of the [policy] is somewhat ambiguous."  Tr. at 10:8-11 (Gorman).  The Gurules stated that they would potentially need to hold a <u>Mark V</u> hearing[3] "with regard to the language of the policy itself, and whether there is ambiguity, and what exactly the language of the policy means."  Tr. at 11:2-4 (Gorman).  Nationwide Insurance admitted that the Court must interpret whether the policy is ambiguous and could potentially hold a "<u>Mark V</u> hearing."  Tr. at 42:3-13 (Biehler, Court).  Regarding the first two <u>Mhoon</u> factors, the Gurules argued that, if the Court held that the insurance policy did not cover Christian Gurule's accident, it would not fully resolve their claims.  They asserted that they have an unfair practices claim independent of the contract claim.  <u>See</u> Tr. at 13:13-16 (Gorman).  Because they have other claims pending in state court, "there will not be complete relief.  Nationwide will still be involved in litigation with the Gurules."  Tr. at 25:7-11 (Gorman).

Regarding the third <u>Mhoon</u> factor -- procedural fencing -- the Gurules argued that "[t]he reason that [Nationwide Insurance] filed first is because they misled the Gurules into believing that they were complying with their statutory duty and adjusting the claim."  Tr. at 17:15-18 (Gorman).  "Obviously, if we had known that that was their decision, that they were going to deny the claim and dispute coverage, we could have filed our case in state court.  And we did so

---

[3]A <u>Mark V</u> hearing refers to a hearing, required by the Supreme Court of New Mexico in <u>Mark V., Inc. v. Mellekas</u>, 114 N.M. 778, 781, 845 P.2d 1232, 1235 (1993)("<u>Mark V</u>"), to determine whether an agreement contains an ambiguity.  If the "evidence is so plain that no reasonable person could hold any way but one, then the court may interpret the meaning as a matter of law."  <u>Mark V</u>, 114 N.M. at 781, 845 P.2d at 1235.  But if the court finds that the contract is "reasonably and fairly susceptible of different constructions, an ambiguity exists." 114 N.M. at 781, 845 P.2d at 1235.

promptly, two days after they filed this case." Tr. at 17:19-23 (Gorman).  Nationwide Insurance denied any procedural fencing, asserting that it responded in detail to the Gurules' claim.  The Court noted, however, that Nationwide Insurance did not tell the Gurules that it was denying coverage until <u>after</u> it filed its lawsuit in federal court.  <u>See</u> Tr. at 37:16-20 (Biehler, Court)(Court: "So you filed the lawsuit, and then how long was it before you sent the letter [declining coverage]?"  Mr. Biehler: "A couple weeks.").

Regarding the fourth <u>Mhoon</u> factor -- comity between federal and state court -- the Gurules noted that the state court "has time and a willingness to hear this case." Tr. at 16:18-19 (Gorman).  Nationwide Insurance conceded that "there is not a great overriding federal interest," except for the fact that Nationwide Insurance is "an out of state insurance company and may not trust the state court." Tr. at 28:5-11 (Biehler, Court).  Nationwide Insurance countered, however, that the state court has little interest in the case.  Even though it has been pending for a long time, "the pendency of that case has nothing to do with the issues that are raised in this declaratory judgment action," because the state case did not include Nationwide Insurance until March.  Tr. at 32:2-4 (Biehler).

The state court has already heard and decided Nationwide Insurance's Motion to Dismiss and Motion to Strike.  It denied both motions.  <u>See</u> Order Denying Nationwide's Motion to Dismiss Plaintiffs' Claims for Declaratory Judgment, Breach of Contract and Trade Practices and Fraud Act Violations at 1, filed in state court September 3, 2015, filed in federal court September 3, 2015 (Doc. 21)("State Court Order Denying Motion to Dismiss"); Order Denying Defendants' Motion to Strike Plaintiff's First Amended Complaint for Wrongful Death and Declaratory Judgment at 1, filed in state court September 3, 2015, filed in federal court September 3, 2015 (Doc. 21)("State Order Denying Motion to Strike").

## LAW REGARDING EXERCISE OF DISCRETIONARY JURISDICTION OVER DECLARATORY JUDGMENT ACTIONS

The Federal Declaratory Judgment Act provides that "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). "[D]istrict courts possess discretion in determining whether and when to entertain an action under the Declaratory Judgment Act, even when the suit otherwise satisfies subject matter jurisdictional prerequisites." Wilton v. Seven Falls Co., 515 U.S. 277, 282 (1995). In Brillhart v. Excess Insurance Co. of America, 316 U.S. 491 (1942), the Supreme Court of the United States explained that district courts are "under no compulsion to exercise . . . jurisdiction" under the Federal Declaratory Judgment Act. 316 U.S. at 494. The Supreme Court explained:

> Ordinarily it would be uneconomical as well as vexatious for a federal court to proceed in a declaratory judgment suit where another suit is pending in a state court presenting the same issues, not governed by federal law, between the same parties. Gratuitous interference with the orderly and comprehensive disposition of a state court litigation should be avoided.

316 U.S. at 495. A court should determine whether the lawsuit "can be better settled in the proceeding pending in the state court." Brillhart v. Excess Ins. Co. of Am., 316 U.S. at 495.

The United States Court of Appeals for the Tenth Circuit has adopted a five-factor test for evaluating whether a district court should exercise its discretionary jurisdiction over a declaratory judgment action:

> [1] whether a declaratory action would settle the controversy; [2] whether it would serve a useful purpose in clarifying the legal relations at issue; [3] whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race to res judicata"; [4] whether use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and [5] whether there is an alternative remedy which is better or more effective.

St. Paul Fire and Marine Ins. Co. v. Runyon, 53 F.3d 1167, 1169 (10th Cir. 1995)(quoting

Mhoon, 31 F.3d at 983).  In St. Paul Fire and Marine Insurance Co. v. Runyon, the plaintiff, an

insurance company, sought a declaratory judgment that it had no obligation to defend the

defendant under the terms of a professional-liability insurance policy.  See 53 F.3d at 1168.  The

defendant sought indemnification and defense for claims that his coworkers brought.  See 53

F.3d at 1168.  The insurance-company plaintiff refused to provide a defense.  See 53 F.3d at

1168.  After three years of negotiation, the defendant told the insurance-company plaintiff that he

would initiate a state court suit for breach of contract and bad faith by February 18, 1994 if it did

not assume his defense.  See 53 F.3d at 1168.  On February 17, 1994, the insurance-company

plaintiff filed a federal court diversity action for declaratory judgment.  See 53 F.3d at 1168.  The

defendant filed a complaint for bad faith and breach of contract in state court on February 18,

1994.  See 53 F.3d at 1168.

The Tenth Circuit noted that the federal declaratory-judgment statute, 28 U.S.C. § 2201,

"vests the federal courts with power and competence to issue a declaration of rights."  St. Paul

Fire and Marine Ins. Co. v. Runyon, 53 F.3d at 1168.  "[W]hether this power should be exercised

in a particular case is vested in the sound discretion of the district courts."  53 F.3d at 1168.  The

federal district court in St. Paul Fire and Marine Insurance Co. v. Runyon had abstained from

exercising jurisdiction, "because the same issues were involved in the pending state proceeding,

and therefore, there existed a more effective alternative remedy."  53 F.3d at 1169.

The Tenth Circuit explained in St. Paul Fire and Marine Insurance Co. v. Runyon:

> The parties have a pending state contract action, which incorporates the identical
> issue involved in the declaratory judgment action.  [The defendant's] state breach
> of contract complaint against [the insurance-company plaintiff] alleges the
> coworkers' lawsuit is a "covered claim" pursuant to the insurance policy.  In
> resolving the insurance contract, the state court will necessarily determine rights

- 9 -

and obligations under the contract.  [The insurance-company plaintiff] is seeking a declaration by the federal court that the coworkers' lawsuit is not a covered claim.  The issue in the federal declaratory judgment action is identical to what would be a defense to the state court contract action -- whether [the defendant]'s insurance contract with [the insurance-company plaintiff] protects him from the coworkers' lawsuit.  Because the state court will determine, under state contract law, whether the tort action is covered by the insurance contract, it is not necessary for the federal court to issue a declaration on the insurance contract.

53 F.3d at 1169.  A federal court is not required to refuse jurisdiction, but it "should not entertain a declaratory judgment action over which it has jurisdiction if the same fact-dependent issues are likely to be decided in another pending proceeding."  St. Paul Fire and Marine Ins. Co. v. Runyon, 53 F.3d at 1170.  A federal court may abstain from exercising jurisdiction over a declaratory judgment action if "the plaintiff is using the action for procedural fencing."  St. Paul Fire and Marine Ins. Co. v. Runyon, 53 F.3d at 1170.  The Tenth Circuit noted that the insurance-company plaintiff's timing of filing suit "may not necessarily be bad faith on [its] part," but found that the insurance-company plaintiff was unable to show error in the district court's perception that it was using the declaratory judgment action for procedural fencing or "to provide an arena for a race to res judicata."  St. Paul Fire and Marine Ins. Co. v. Runyon, 53 F.3d at 1170 (emphasis in original).

In State Farm Fire & Casualty Co. v. Mhoon, Robert Mhoon's shooting of Takuro Fujiwara resulted in three lawsuits.  See 31 F.3d at 981.  Fujiwara and his wife filed suit in state court on November 2, 1990, alleging that Mhoon committed intentional torts against them.  See 31 F.3d at 982.  State Farm, Mhoon's insurer, agreed to defend him against the Fujiwaras, "but only under a reservation of rights which left State Farm free to seek a judicial determination of its contractual obligations to Mhoon."  31 F.3d at 982.  On June 12, 1991, State Farm filed a declaratory judgment action under 28 U.S.C. § 2201 and sought declaration that Mhoon was not covered under the policy because he shot Fujiwara intentionally.  See State Farm Fire & Cas. Co.

v. Mhoon, 31 F.3d at 982. "Though the state tort suit between Mhoon and [Fujiwara] was still in

progress at the time, the federal district judge agreed to hear State Farm's declaratory action." 31

F.3d at 982. The federal district court ruled, as a matter of law, that Mhoon intentionally shot

Fujiwara. See 31 F.3d at 982.

> The critical question whether Mhoon acted intentionally was before both the state
> and federal courts simultaneously and the federal court's failure to await the state
> court's resolution of the issue opened the possibility that the state court would be
> foreclosed from deciding that Mhoon behaved only negligently and was, thus,
> entitled to be insured and defended.

31 F.3d at 983.

The Tenth Circuit in State Farm Fire and Casualty Co v. Mhoon held that the federal

district court did not abuse its discretion by hearing the case, because "a live need for declaration

of State Farm's rights and duties did, in fact, exist." 31 F.3d at 983-84. The Tenth Circuit based

its decision on three factors: (i) neither party suggested that State Farm could have been or was a

party to the state tort action, "thus obviating the need for an independent declaratory action and

providing a simpler and more efficient resolution of State Farm's obligations towards Mhoon";

(ii) there was substantial interest in deciding the question of duty to defendant without delay; and

(iii) the federal district court was an available forum to State Farm. 31 F.3d at 984. The Tenth

Circuit noted that the federal court's exercise of jurisdiction did not unduly interfere with the

state proceeding. See 31 F.3d at 984. The federal court's decision on State Farm's duty

"involved no matter, factual or legal, at issue in the state case." 31 F.3d at 984. The coverage

issue was not a complicated one and involved only a search of the record to determine whether

Mhoon's conduct was accidental under the insurance policy. See 31 F.3d at 984. "[It] was not a

case, therefore, where the district court found a material factual dispute and proceeded to resolve

it in the face of ongoing state proceedings on the same subject." 31 F.3d at 984. The Tenth

Circuit stated that that scenario would have presented a different issue, especially if the state proceedings were quite far along.   Under those circumstances, a stay or dismissal might be proper.  See 31 F.3d at 984.

In 2006, the Honorable Bobby Baldock, Senior United States Circuit Judge, sitting by designation on the United States District Court for the District of New Mexico, denied the defendants' motion to dismiss, but granted the defendants' request to stay the proceedings.  See Progressive Specialty Ins. Co. v. Thakur, Order Denying Defendants' Motion to Dismiss But Allowing Defendants' Alternative Motion to Stay Proceedings, No. CIV 06-0542 BRB/RHS (D.N.M. November 14, 2006)(Doc. 14)("Thakur Order").  In Progressive Specialty Ins. Co. v. Thakur, the insurance company sought declaratory judgment that the total amount of coverage owed to the insured was $50,000.00.  See Thakur Order at 2.  The insured counterclaimed, seeking a declaration of rights and obligations, reformation of the insurance contract, and monetary damages for breach of contract, negligence, bad-faith dealing, and violation of the New Mexico Insurance Code and Unfair Practices Act.  See Thakur Order at 2.  The insured also responded to the insurance company's suit in federal court by filing his own suit against the insurance company in state court.  See Thakur Order at 2.  The insured named an additional defendant that he contended was a necessary and indispensable party to the federal lawsuit.  See Thakur Order at 2. The additional defendant was the insurance agency that sold the insurance policy to the insured.  See Thakur Order at 2.  Both the insured and the agency were New Mexico residents, and the joinder of the insurance agency "effectively destroyed diversity jurisdiction and the possibility of removal from state court." Thakur Order at 2.  Although the insured's state lawsuit was "broader in scope," it essentially raised issues identical to the insurance company's federal lawsuit.  Thakur Order at 3.

Judge Baldock determined that "the state proceeding, unlike [the federal lawsuit], appear[s] to encompass the entire controversy by addressing both [the insurance company's] and [the insurance agent's] potential liability to [the insured]." Thakur Order at 5. "In other words, the rights and obligations of all concerned parties may be adjudicated only in the state action," while the federal lawsuit "might lead to piecemeal litigation thereby undermining both federal and state interests in practicality and wise judicial administration." Thakur Order at 5 (internal quotations omitted and emphasis in original). Judge Baldock explained that, for the same reasons, "the state remedy appears to be the most effective. Because the state action [would] likely decide the rights of all interested parties, including the parties to the [federal action], such remedy necessarily is more comprehensive and cohesive." Thakur Order at 6. Judge Baldock did not believe that the federal lawsuit provided the insured with an effective remedy, "because he might very well have to argue factually and legally similar issues against [the insurance agency] in state court." Thakur Order at 6.

More importantly, Judge Baldock explained that the case presented "purely questions of state law including the interpretation of the state's insurance code." Thakur Order at 6. "The State of New Mexico has the predominant interest in deciding a matter involving an insurance policy issued within the state to a state resident involved in an auto accident on a state thoroughfare." Thakur Order at 6. Judge Baldock did not dismiss the case, but stayed it, because "a stay avoids problems which might arise if application of a time bar might prevent [the insurance company] from refiling its federal action." Thakur Order at 7.

The Supreme Court resolved a clash among the circuits concerning whether a district court's decision to dismiss a federal declaratory judgment action in favor of parallel state litigation is governed by the discretionary standard of Brillhart v. Excess Insurance Co., or the

"exceptional circumstances" test in Colorado River.  See Wilton v. Seven Falls Co., 515 U.S. 277, 285 (1995); Youell v. Exxon Corp., 74 F.3d 373, 375 (2d Cir. 1996).  The Supreme Court held that district courts should apply the Brillhart test, finding that "[d]istinct features of the Declaratory Judgment Act . . . justify a standard vesting district courts with greater discretion in declaratory judgment actions than that permitted under the 'exceptional circumstances' test of Colorado River."  Wilton, 515 U.S. at 286.

## LAW REGARDING YOUNGER ABSTENTION AND CLAIMS FOR MONEY DAMAGES

Under the abstention doctrine that the Supreme Court articulated in Younger, "federal courts should not 'interfere with state court proceedings' by granting equitable relief -- such as injunctions of important state proceedings or declaratory judgments regarding constitutional issues in those proceedings" -- when the state forum provides an adequate avenue for relief.  Weitzel v. Div. of Occupational & Prof'l Licensing, 240 F.3d 871, 875 (10th Cir. 2001)(quoting Rienhardt v. Kelly, 164 F.3d 1296, 1302 (10th Cir.1999)).  Younger abstention is not a doctrine only belonging to courts of equity, although the doctrine arose from parties seeking equitable relief from state court proceedings in federal court.  The Tenth Circuit has "not treated abstention as a 'technical rule of equity procedure,' [r]ather, [it has] recognized that the authority of a federal court to abstain from exercising its jurisdiction extends to all cases in which the court has discretion to grant or deny relief."  Morrow v. Winslow, 94 F.3d 1386, 1392 (10th Cir. 1996)(quoting Quackenbush v. Allstate Ins. Co., 517 U.S. 706, 716-17 (1996)).  This refusal to exercise federal jurisdiction arises from a desire to "avoid undue interference with states' conduct of their own affairs."  J.B. ex rel. Hart v. Valdez, 186 F.3d 1280, 1291 (10th Cir. 1999)(quoting Seneca-Cayuga Tribe v. Oklahoma, 874 F.2d 709, 711 (10th Cir. 1989)).

- 14 -

For Younger abstention to be appropriate, the Tenth Circuit has ruled that three elements must be present: (i) interference with an ongoing state judicial proceeding; (ii) involvement of important state interests; and (iii) an adequate opportunity afforded in the state court proceedings to raise the federal claims.  See J.B. ex rel. Hart v. Valdez, 186 F.3d at 1291 (citing Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n, 457 U.S. 423, 432 (1982)); Sw. Air Ambulance, Inc. v. City of Las Cruces, 268 F.3d 1162, 1177-78 (10th Cir. 2001).  When all of the elements mandating abstention clearly exist in the record, courts may, and should, address application of the Younger abstention doctrine sua sponte.  See Bellotti v. Baird, 428 U.S. 132, 143 n.10 (1976)(stating that "abstention may be raised by the court sua sponte"); Morrow v. Winslow, 94 F.3d 1386, 1390-91 & n. 3 (10th Cir. 1996)(raising and applying Younger abstention doctrine sua sponte, and holding that parties need not raise the Younger abstention doctrine to preserve its applicability).

"Younger abstention is not discretionary once the [three] conditions are met, absent extraordinary circumstances that render a state court unable to give state litigants a full and fair hearing on their federal claims."  Seneca-Cayuga Tribe v. Oklahoma, 874 F.2d 709, 711 (10th Cir. 1989)(citation omitted).  See Taylor v. Jaquez, 126 F.3d 1294, 1296 (10th Cir. 1997)(holding that, because "'application of the Younger doctrine is absolute . . . when a case meets the Younger criteria,' there is no discretion for the district court to exercise.").  When the elements of Younger abstention are met, a district court should dismiss the claims before it, unless a petitioner has brought claims which "cannot be redressed in the state proceeding," in which case the district court should stay the federal proceedings pending the conclusion of the state litigation.  Deakins v. Monaghan, 484 U.S. 198, 194 (1988).  For example, where a party brings a claim for damages under 42 U.S.C. § 1983, as well as a request for equitable relief from

a state court proceeding, a federal district court should dismiss the claims for equitable relief under Younger, but stay the complaint with respect to the damages claim, since § 1983 is exclusively a federal cause of action.   See Myers v. Garff, 876 F.2d 79, 81 (10th Cir. 1989)(holding that a district court was right to dismiss claims for declaratory and injunctive relief, but that the district court should have stayed claims for damages under § 1983 against defendants until the state court proceedings ended).   See also Younger v. Harris, 401 U.S. at 43 (holding that the federal courts must dismiss suits requesting declaratory or injunctive relief when there are pending state criminal proceedings).

On the other hand, where a state court can address a plaintiff's causes of action, a federal court should abstain and dismiss the case even if the plaintiff requests monetary damages in addition to injunctive relief from the state court proceeding.   In Wideman v. Colorado, 242 F. App'x 611 (10th Cir. 2007), the Tenth Circuit considered a parent's complaints alleging ongoing violations arising from the Colorado state courts' adjudication of his child custody rights.   See 242 F. App'x at 613.   The parent had requested a federal district court to issue an order regarding his parental rights and rights to child support payments, and to award the parent monetary damages recompensing him for his past child support payments.   See 242 F. App'x at 611. Additionally, the parent alleged that the Colorado state trial and appellate courts had treated him with "disrespect" on account of his gender and race, and he brought a § 1983 case in federal court seeking money damages from the state court officials adjudicating his state custody case. 242 F. App'x at 613.   The Tenth Circuit ruled that the district court was right to abstain from hearing the parent's case under Younger v. Harris.   The Tenth Circuit explained that the parent's "complaints assert claims that involve matters still pending in Colorado state courts," as the custody proceedings were ongoing.   242 F. App'x at 614.   Further, the dispute implicated

"important state interests," because the parent's complaints covered domestic relations issues. 242 F. App'x at 614. Last, the Tenth Circuit found that the parent had "an adequate opportunity to litigant any federal constitutional issues that may arise . . . in the Colorado state proceedings." 242 F. App'x at 614. Thus, where the criteria for abstention delineated under Younger v. Harris are otherwise met, even if a party requests monetary damages, a federal court in the Tenth Circuit must abstain from adjudicating the entire case while state proceedings are ongoing.

## LAW REGARDING COLORADO RIVER ABSTENTION

In Colorado River, the Supreme Court announced an abstention doctrine under which a federal court may, in exceptional circumstances, dismiss a federal suit "due to the presence of a concurrent state proceeding for reasons of wise judicial administration." 424 U.S. at 817-18. The Supreme Court reviewed the decision of a district court to dismiss an action that the United States brought in deference to an ongoing state court proceeding. See 424 U.S. at 805-06. The United States sought a declaration of its water rights, the appointment of a water master, and injunctive relief. See 424 U.S. at 284. The Tenth Circuit reversed the district court, holding that the suit was within the district court's jurisdiction and that abstention was inappropriate. In overturning the Tenth Circuit and affirming the district court's determination, the Supreme Court articulated several factors that district courts should consider in assessing whether to grant dismissals or stays in instances where similar issues are being concurrently litigated in state and federal courts. Those factors are: (i) whether the questions before the court present difficult questions of state law, are governed by state as opposed to federal law,[4] or bear on policy problems of substantial import to the state; (ii) whether principles of wise judicial administration

---

[4]This factor's development can be traced from Colorado River, 424 U.S. at 825-26, to Will v. Calvert Fire Ins. Co., 437 U.S. 655, 667, 668-77 (1978), and on to Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 23 (1983).

and economy suggest deferring to the state courts; (iii) which court first assumed jurisdiction over any property at issue; (iv) whether the federal forum is less convenient; (v) whether allowing the matter to go forward in state court would avoid piecemeal litigation; and (vi) in which order jurisdiction was obtained by the concurrent forums. See Colorado River, 424 U.S. at 814-19; Burford v. Sun Oil Co., 319 U.S. 315 (1943). A finding of parallel proceedings is a threshold condition for engaging in the Colorado River analysis. See Fox v. Maulding, 16 F.3d 1079, 1081 (10th Cir. 1994). Even in the Colorado River abstention context, however, exact identity of parties and issues is not required. Rather, state and federal proceedings are sufficiently parallel if "substantially the same parties litigate substantially the same issues." Fox v. Maulding, 16 F.3d at 1081 (quotation omitted).

In applying the factors set forth in Colorado River, the Supreme Court in Moses H. Cone Memorial Hospital v. Mercury Construction Corp., 460 U.S. 1 (1983), stated: "No one factor is necessarily determinative; a carefully considered judgment taking into account both the obligation to exercise jurisdiction and the combination of factors counseling against that exercise is required." 460 U.S. at 15-16. Addressing the factor concerning in which order jurisdiction was obtained, the Supreme Court asserted that:

> This factor, as with the other Colorado River factors, is to be applied in a pragmatic, flexible manner with a view to the realities of the case at hand. Thus, priority should not be measured exclusively by which complaint was filed first, but rather in terms of how much progress has been made in the two actions. Colorado River illustrates this point well. There, the federal suit was actually filed first. Nevertheless, we pointed out as a factor favoring dismissal the apparent absence of any proceedings in the District Court, other than the filing of the complaint, prior to the motion to dismiss.

Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. at 21-22 (internal quotation omitted).

District courts may only stay or dismiss such actions when "extraordinary circumstances," as established by a weighing of the factors laid out in Colorado River, warrant. Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. at 14-15.  "Colorado River abstention is based on the policy of conserving judicial resources in situations involving the contemporaneous exercise of concurrent jurisdictions." Grimes v. Crown Life Ins. Co., 857 F.2d 699, 707 (10th Cir. 1988).  Highlighting the distinction between the Colorado River abstention doctrine and the abstention doctrine in Brillhart v. Excess Insurance Co. of America, 316 U.S. 491 (1942), the United States Court of Appeals for the Fifth Circuit, in a case contained within a string of cases to which the Tenth Circuit has cited favorably, has held:

> Brillhart abstention is applicable "when a district court is considering abstaining from exercising jurisdiction over a declaratory judgment action.  In contrast, when actions involve coercive relief the trial court must apply the standards enunciated by the Court in Colorado River. . . ."  When a party seeks both injunctive and declaratory relief, the appropriateness of abstention must be assessed according to the doctrine of Colorado River; the only potential exception to this general rule arises when a party's request for  injunctive relief is either frivolous or is made solely to avoid application of the Brillhart standard.

Black Sea Inv., Ltd., v. United Heritage Corp., 204 F.3d 647, 652 (5th Cir. 2000).  See United States v. Las Cruces, 289 F.3d 1170, 1181-82 (10th Cir. 2002)(stating that, "in a suit seeking coercive relief as well as declaratory relief, [the] broad Brillhart standard [is] inappropriate.").

In Moses H. Cone Memorial Hospital v. Mercury Construction Corp., the defendant moved for an order compelling arbitration under 9 U.S.C. § 4.  See 460 U.S. at 4.  The district court applied the Colorado River abstention doctrine and stayed the diversity action pending resolution of a pending concurrent state-court action.  The United States Court of Appeals for the Fourth Circuit reversed the stay order, and the Supreme Court affirmed the Fourth Circuit's reversal.  Applying the Colorado River factors, Justice Brennan, writing for the majority, wrote:

> [I]t is clear that there was no showing of the requisite exceptional circumstances to justify the District Court's stay.  The Hospital concedes that the first two factors mentioned in <u>Colorado River</u> are not present here.  There was no assumption by either court of jurisdiction over any res or property, nor is there any contention that the federal forum was any less convenient to the parties than the state forum.  The remaining factors -- avoidance of piecemeal litigation, and the order in which jurisdiction was obtained by the concurrent forums -- far from supporting the stay, actually counsel against it.

460 U.S. at 18.  The Supreme Court found that there was not piecemeal litigation because "[a]lthough the Hospital will have to litigate the arbitrability issue in federal rather than state court, that dispute is easily severable from the merits of the underlying disputes."  460 U.S. at 20.  The Hospital argued that the federal-court stay was proper because the state court suit was filed nineteen days before the federal suit.  The Supreme Court found that this did not necessarily favor abstention in the unique circumstance.  The plaintiff filed its cause of action for an arbitration order because the Hospital refused to arbitrate, but the Hospital did not refuse until less than a day before the Hospital filed its state suit, and thus the plaintiff had no reasonable opportunity to file its § 4 petition first.  <u>See</u> 460 U.S. at 21.  The Supreme Court also expressed concern over the "probable inadequacy of the state-court proceeding to protect Mercury's rights."  460 U.S. at 26.  Justice Brennan explained:

> In many cases, no doubt, a § 3 stay is quite adequate to protect the right to arbitration.  But in a case such as this, where the party opposing arbitration is the one from whom payment or performance is sought, a stay of litigation alone is not enough.  It leaves the recalcitrant party free to sit and do nothing -- neither to litigate nor to arbitrate.  If the state court stayed litigation pending arbitration but declined to compel the Hospital to arbitrate, Mercury would have no sure way to proceed with its claims except to return to federal court to obtain a § 4 order -- a pointless and wasteful burden on the supposedly summary and speedy procedures prescribed by the Arbitration Act.

460 U.S. at 27.

In <u>Nationstar Mortgage, LLC v. Knox</u>, 351 F. App'x 844 (5th Cir. 2009), the Fifth Circuit reviewed the district court's decision to decline jurisdiction and deny a motion to compel

arbitration because there was a pending state-court proceeding.  See 351 F. App'x at 847.  The Fifth Circuit, on appeal, stated: "[F]or purposes of judicial efficiency, although the district court did not expressly rely on the Colorado River abstention doctrine, we may consider *sua sponte* whether the requirements of Colorado River are met."  351 F. App'x at 851.  The Fifth Circuit found that the first two Colorado River factors were not present and determined that the third factor -- the possibility of piecemeal litigation -- counseled against abstention because "[a]llowing a federal court to order arbitration, even where a state court may construe an arbitration clause differently, is fully consistent with [] established congressional intent." Nationstar Mortgage, LLC v. Knox, 351 F. App'x at 851-52 (quoting Brown v. Pac. Life Ins. Co., 462 F.3d 384, 396 (5th Cir. 2006)).  The Fifth Circuit also found that the fifth factor -- the extent to which federal law provides the rules of decision on the merits -- favored federal jurisdiction because, although the Knoxes' claims in state court were based on state law, the Federal Arbitration Act governed the merits of the federal action.  See 351 F. App'x at 852.  The Fifth Circuit found, however, that the fourth factor -- the order in which the forums obtained jurisdiction -- favored abstention: the state action was filed first, and although arbitrability was not asserted in state court, Nationstar Mortgage could have done so and still could do so, whereas the merits of the federal action had not been reached.  See 351 F. App'x at 852.  The Fifth Circuit also found that the sixth factor -- the adequacy of the state proceedings in protecting the rights of the party invoking diversity jurisdiction -- weighed in favor of abstention.  See 351 F. App'x at 852 ("Needless to say, we have no reason to doubt the adequacy of the state court's ability to resolve arbitrability issues.").  After considering the factors and finding that two factors were neutral, two favored abstention, and two counseled against it, the Fifth Circuit concluded that the district court did not abuse its discretion in abstaining:

> We are fully cognizant of the "national policy in favor of arbitration."  Brown, 462 F.3d at 396.  For reasons of "[w]ise judicial administration," Colo. River, 424 U.S. at 817, however, abstention was not improper.  As discussed, this diversity action is governed by state law (except, of course, the arbitrability issue); the state court is subject to, and can likewise apply, the FAA; and the merits of the parties' dispute have not been reached in either the state or the federal action.

Nationstar Mortgage, LLC v. Knox, 351 F. App'x at 852.

## LAW REGARDING SUPREME COURT OF NEW MEXICO CASES ON UNINSURED MOTORIST COVERAGE

The Supreme Court of New Mexico has recognized that § 66-5-301 NMSA[5] "embodies a

public policy of New Mexico to make uninsured motorist coverage a part of every automobile

---

[5]N.M.S.A. 1978, § 66-5-301(A) and (C), in relevant part, state:

A.  No motor vehicle or automobile liability policy insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person and for injury to or destruction of property of others arising out of the ownership, maintenance or use of a motor vehicle shall be delivered or issued for delivery in New Mexico with respect to any motor vehicle registered or principally garaged in New Mexico unless coverage is provided therein or supplemental thereto in minimum limits for bodily injury or death and for injury to or destruction of property as set forth in Section 66-5-215 NMSA 1978 and such higher limits as may be desired by the insured, but up to the limits of liability specified in bodily injury and property damage liability provisions of the insured's policy, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness or disease, including death, and for injury to or destruction of property resulting therefrom, according to the rules and regulations promulgated by, and under provisions filed with and approved by, the superintendent of insurance.

* * * *

C.  [T]he named insured shall have the right to reject uninsured motorist coverage as described in Subsections A and B of this section; provided that unless the named insured requests such coverage in writing, such coverage need not be provided in or supplemental to a renewal policy where the named insured has

liability insurance policy issued in this state, with certain limited exceptions," and that the statute is "intended to expand  insurance coverage and to protect individual members of the public against the hazard of culpable uninsured motorists." Romero v. Dairyland Ins. Co., 111 N.M. 154, 156, 803 P.2d 243, 245 (1990).  Based upon those observations, the Supreme Court of New Mexico considers § 66-5-301 a remedial statute and, thus, maintains that it be liberally interpreted to further its purpose, construing exceptions to uninsured motorist coverage strictly to protect the insured.  See Romero v. Dairyland Ins. Co., 111 N.M. at 156, 803 P.2d at 245.  The Supreme Court of New Mexico has noted that an insured may reject uninsured motorist coverage, but that such rejection must satisfy the applicable regulations.  See Romero v. Dairyland Ins. Co., 111 N.M. at 156, 803 P.2d at 245.  To be valid, a rejection of uninsured motorist coverage must be made a part of the policy by endorsement on the declarations sheet, by attachment of the written rejection to the policy, or by some other means that makes the rejection a part of the policy so as to clearly and unambiguously call to the insured's attention that UM coverage has been waived.  See Romero v. Dairyland Ins. Co., 111 N.M. at 156, 803 P.2d at 245.  With respect to the regulation requiring that the rejection be made a part of the policy delivered to the insured, the Supreme Court of New Mexico has stated:

> Providing affirmative evidence of the rejection of the coverage comports with a policy that any rejection of the coverage be knowingly and intelligently made. Any individual rejecting such coverage should remain well informed as to that decision. We find that the regulation of the superintendent of insurance furthers a legislative purpose to provide for the inclusion of uninsured motorist coverage in every automobile liability policy unless the insured has knowingly and intelligently waived such coverage.

---

rejected the coverage in connection with a policy previously issued to him by the same insurer.

N.M. Stat. § 66-5-301(A) & (C)(emphasis added).

Romero v. Dairyland Ins. Co., 111 N.M. at 156-57, 803 P.2d at 245-46.   Based upon that assessment of § 66-5-301 and N.M.A.C. § 13.12.3.9, the Supreme Court of New Mexico has held that, unless the named insured rejects uninsured motorist coverage in a manner consistent with statutory and administrative requirements, uninsured motorist coverage shall be read into an insured's policy regardless of the parties' intent or the fact that a premium has not been paid. See Kaiser v. DeCarrera, 122 N.M. 221, 223, 923 P.2d 588, 590 (1996)(quoting Romero v. Dairyland Ins. Co., 111 N.M. at 155, 803 P.2d at 244).

In Montano v. Allstate Indemnity Co., 135 N.M. 681, 92 P.3d 1255 (2004), the Supreme Court of New Mexico addressed the stacking of insurance coverage, noting that its cases had "expressed a public policy in favor of stacking," and that "it is unfair not to allow stacking when multiple premiums are paid or when the policy is otherwise ambiguous."   135 N.M. at 685, 92 P.3d at 1259 (emphasis in original).  The Supreme Court of New Mexico indicated that it would take the opportunity to "chart a new course."  Montano v. Allstate Indem. Co., 135 N.M. at 686, 92 P.3d at 1260.   Interpreting § 66-5-301(A) and (C), the Supreme Court of New Mexico held that "an insurance company should obtain written rejections of stacking in order to limit its liability based on an anti-stacking provision" and that, with "written waivers, insureds will know exactly what coverage they are receiving and for what cost."  Montano v. Allstate Indem. Co., 135 N.M. at 686-87, 92 P.3d at 1260-61.   In sum, the Supreme Court of New Mexico has recognized the New Mexico Legislature's policy favoring uninsured motorist coverage.

In Marckstadt v. Lockheed Martin Corp., 2010-NMSC-001, 147 N.M. 678, 229 P.3d 462, the Supreme Court of New Mexico consolidated cases before it, including a case that the Tenth Circuit certified to it, to answer the question of what is required under § 66-5-301 and N.M.A.C.

§ 13.12.3.9 to effectively reject uninsured motorist coverage.  See 2010-NMSC-001, ¶ 13.[6]  The

Supreme Court of New Mexico held that, "in order for the offer and rejection requirements of

Section 66-5-301 to effectuate the policy of expanding [uninsured or underinsured motorist]

coverage, the insurer is required to meaningfully offer such coverage and the insured must

knowingly and intelligently act to reject it before it can be excluded from a policy."  Marckstadt

v. Lockheed Martin Corp., 2010-NMSC-001, ¶ 16 (emphasis original).   It found that "the

rejection which the regulation requires to be in writing must be the act of rejection described in

the statute" and held that an insured must reject uninsured motorist coverage in writing.

Marckstadt v. Lockheed Martin Corp., 2010-NMSC-001, ¶ 22 (emphasis original).    In

Progressive Northwestern Insurance Co. v. Weed Warrior Services, 2010-NMSC-050, 245 P.3d

1209, the Supreme Court of New Mexico answered

> in the affirmative the question, certified to us by the United States Court of
> Appeals for the Tenth Circuit, of whether election by an insured to purchase
> [uninsured or underinsured motorist] coverage in an amount less than the policy
> limits constitutes a rejection of the maximum amount of [uninsured or
> underinsured motorist] coverage permitted under Section 66-5-301.

2010-NMSC-050, ¶ 1.[7]  It found that § 66-5-301 provides that insurers must offer uninsured

motorist coverage, or underinsured motorist coverage, in an amount greater than the minimums

---

[6]The Tenth Circuit certified Federated Serv. Inc. Co. v. Martinez, 300 F. App'x 618 (10th Cir. 2008)(unpublished), and the question: "For a valid rejection of [uninsured or underinsured motorist] coverage under New Mexico law, must that rejection be written, signed by the insured, and attached to the policy?"  300 F. App'x at 619.  In the district court, the Honorable James A. Parker, Senior United States District Judge for the District of New Mexico, granted the plaintiffs' motion for summary judgment and found that the defendant's employer had validly rejected uninsured motorist coverage for its employees.  See Federated Serv. Inc. Co. v. Martinez, No. 06-638, 2007 WL 8045157, at *4 (D.N.M. July 14, 2006)(Parker, J.), reversed, 385 F. App'x 845.  After the Supreme Court of New Mexico decided Marckstadt v. Lockheed Martin Corp., the Tenth Circuit reversed Senior Judge Parker's judgment.  See Federated Serv. Ins. Co. v. Martinez, 385 F. App'x 845, 849-50 (10th Cir. 2010).

required.  See Progressive N.W. Ins. Co. v. Weed Warrior Servs., 2010-NMSC-050, ¶ 10.  The

Supreme Court of New Mexico held that the "Legislature intended for drivers to have the option

of carrying [uninsured or underinsured motorist] coverage equal to their policy limits," and

rejected "any suggestion that Section 66-5-301 places a burden on the insured to request

[uninsured or underinsured motorist] coverage."  Progressive N.W. Ins. Co. v. Weed Warrior

Servs., 2010-NMSC-050, ¶¶ 12-13.  It noted that the right to reject coverage cannot be

meaningfully exercised without an offer of coverage equal to policy limits, and that it would not

"impose on the consumer an expectation that she or he will be able to make an informed decision

as to the amount of [uninsured or underinsured motorist] coverage desired or required without

first receiving information from the insurance company."  Progressive N.W. Ins. Co. v. Weed

Warrior Servs., 2010-NMSC-050, ¶ 13.

---

[7]Citing the split among the district judges in the United States District Court for the
District of New Mexico, the Tenth Circuit certified, in Progressive Northwestern Ins. Co. v.
Weed Warrior Services, 368 F. App'x 853 (10th Cir. 2010)(unpublished), the question: "Does
the election to take [uninsured or underinsured motorist] coverage for less than the general policy
liability limits constitute a rejection under the New Mexico uninsured motorist statute, N.M. Stat.
§ 66-5-301(A)."  368 F. App'x at 854.  In its certification order, the Tenth Circuit noted that the
Court had held, in Farm Bureau Mutual Insurance Co. v. Jameson, 472 F. Supp. 2d 1272
(D.N.M. 2006)(Browning, J.), that election to take uninsured motorist coverage in an amount
less than the general coverage constitutes a rejection under the New Mexico statute.  See
Progressive N.W. Ins. Co. v. Weed Warrior Servs., 368 F. App'x at 857 (citing Farm Bureau Ins.
Co. v. Jameson, 472 F. Supp. 2d at 1280)(the Tenth Circuit incorrectly stated the Court's
holding, stating that "election to take UM/UIM coverage in amount less than the general
coverage constitutes a rejection under the New Mexico statute," when the Court held that such
election does not constitute a rejection without a signed, written rejection).  In the district court,
in Progressive N.W. Ins. Co. v. Weed Warrior Servs., the Honorable Judith C. Herrera, United
States District Judge for the District of New Mexico, denied both the defendant's and the
plaintiff's motions for summary judgment.  See 588 F. Supp. 2d 1281, 1282 (D.N.M.
2008)(Herrera, J.).  Judge Herrera found that the policy at issue "should be enforced as written,
to provide $100,000 in [uninsured or underinsured motorist] coverage, which is offset by the
$100,000 already received from the tortfeasor, rather than being reformed to provide $1 million
in [uninsured or underinsured motorist] coverage."  Progressive N.W. Ins. Co. v. Weed Warrior
Servs., 588 F. Supp. 2d at 1288.  After the Supreme Court of New Mexico reached its decision,
the Tenth Circuit reversed Judge Herrera.  See Progressive N.W. Ins. Co. v. Weed Warrior
Servs., 405 F. App'x 284, 288 (10th Cir. 2010)(unpublished).

<u>**ANALYSIS**</u>

The <u>Younger</u> and <u>Colorado River</u> abstention doctrines do not require the Court to decline to exercise federal jurisdiction. Nonetheless, because the <u>Mhoon</u> factors suggest the Court should do so, it will decline to exercise federal jurisdiction in this unique circumstance. The Court declines to exercise jurisdiction because: (i) in the circumstances of this case, the state court can better resolve the parties' dispute; (ii) to avoid friction between state and federal courts; and (iii) to discourage procedural fencing that results in delayed insurance claim resolution.

**I. THE <u>YOUNGER</u> AND <u>COLORADO RIVER</u> ABSTENTION DOCTRINES DO NOT REQUIRE THE COURT TO DECLINE TO EXERCISE JURISDICTION.**

Although the Court will not exercise jurisdiction over Nationwide's declaratory judgment action, the abstention doctrines under <u>Younger</u> and <u>Colorado River</u> do not require the Court to abstain. Both doctrines apply to situations in which the plaintiff asks the Court to issue injunctive relief or decide constitutional issues that will preclude the state proceeding.

**A. THE <u>YOUNGER</u> ABSTENTION DOCTRINE DOES NOT REQUIRE THE COURT TO ABSTAIN.**

<u>Younger</u> abstention is limited to cases in which a litigant seeks the federal court to either issue an injunction or decide constitutional issues that will preclude the state proceeding. <u>See Younger</u>, 401 U.S. 37-40; <u>Weitzel v. Div. of Occupational & Prof'l Licensing</u>, 240 F.3d 871, 875 (10th Cir. 2001)(stating that "federal courts should not 'interfere with state court proceedings' by granting equitable relief -- such as injunctions of important state proceedings or declaratory judgments regarding constitutional issues in those proceedings" -- when the state forum provides an adequate avenue for relief)(quoting <u>Rienhardt v. Kelly</u>, 164 F.3d 1296, 1302 (10th Cir.1999)); <u>Myers v. Garff</u>, 876 F.2d at 81. Neither situation applies here. <u>See</u> Tr. at

45:15-20 (Court).  The Tenth Circuit has held that, because the parties did not ask the district court to provide "any equitable relief that interfered with the related state proceedings," "*Younger* is not applicable here."  164 F.3d at 1303.  Nationwide Insurance does not ask that the Court enjoin state court proceedings or to decide a constitutional issue that will preclude the state proceeding.  See Complaint at 1.  Accordingly, <u>Younger</u> does not require the Court to abstain.

  **B.**  **THE <u>COLORADO RIVER</u> ABSTENTION DOCTRINE DOES NOT REQUIRE THE COURT TO ABSTAIN.**

<u>Colorado River</u> announced an abstention doctrine that allows federal courts, in exceptional circumstances, to dismiss a federal suit "due to the presence of a concurrent state proceeding for reasons of wise judicial administration."  424 U.S. at 817-18.  Although the Supreme Court used broad language in describing the doctrine, the case's unique demonstrate the doctrine's limited application.  See <u>Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.</u>, 460 U.S. at 14-15 (noting that district courts may only stay or dismiss such actions in "extraordinary circumstances").  <u>Colorado River</u> involved decisions affecting a complex state regulatory regime involving interstate water rights.  See <u>Colorado River</u>, 424 U.S. at 824.  The <u>Colorado River</u> abstention doctrine seeks to avoid allowing federal judges, with no expertise in detailed state regulatory regimes, to override a state legislature's reasoned determination of important policy issues.  See <u>Colorado River</u>, 424 U.S. at 814-19.  The Supreme Court directs district courts to apply the doctrine in a "pragmatic, flexible manner with a view to the realities of the case at hand."  <u>Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.</u>, 460 U.S. at 21.

  The Court adopts that pragmatic approach here.  The Supreme Court provided six factors to consider.  First, the Court notes that the questions before the Court do not present difficult questions of state law that "bear on policy problems of substantial import to the state."  <u>Colorado River</u>, 424 U.S. at 814-19.  Instead, it asks the Court to determine whether the policy covers

Christian Gurule's accident.  This involves the application of established law to the facts of the case.  Although uninsured motorist policy coverage is an important policy issue to New Mexico, this case does not raise the kind of substantial policy issues that would require the Court to interfere with state law.  See Colorado River, 424 U.S. at 814-19 (applying the doctrine to an interstate water regulatory scheme); Rienhardt v. Kelly, 164 F.3d at 1303 (concluding that the doctrine did not apply without "the clearest of justifications").  Second, as described infra, under the Mhoon factors, "principles of wise judicial administration and economy" suggest that the Court should defer to state courts.  The third factor is inapplicable, as no court "assumed jurisdiction over any property at issue." Colorado River, 424 U.S. at 814-19.

Fourth, the federal forum is no less convenient than the state forum.  See Colorado River, 424 U.S. at 814-19 (finding the federal court to be an inconvenient forum when the parties lived and worked in the vicinity of the state court).  The Gurules live and work in Penasco, New Mexico, which is closer to the Fourth Judicial District's courthouse in Las Vegas, New Mexico than it is to courts in Bernalillo County.  Fifth, allowing the matter to go forward in state would avoid piecemeal litigation.  The state court has all the Gurules' claims before it, while the federal court has only the declaratory judgment action regarding the Gurules' policy coverage.  See Complaint ¶¶ 10-11, at 3.  This fact alone, however, is no reason to deny Nationwide Insurance the benefits of federal jurisdiction.

Finally, although the state court obtained jurisdiction over the action first, the federal court first obtained jurisdiction over the issue now before the Court.  Colorado River seeks to avoid interference with an ongoing state judicial proceeding not only for comity reasons, but also for policy reasons.  It seeks to avoid the duplication of significant efforts.  See Grimes v. Crown Life Ins. Co., 857 F.2d at 707 ("Colorado River abstention is based on the policy of conserving

judicial resources in situations involving the contemporaneous exercise of concurrent jurisdictions."). Here, the state court has invested considerable efforts in deciding this case. Although it has not yet decided the issue of whether the Gurules' policy covered Christian Gurule's accident, it has already decided Nationwide Insurance's Motion to Dismiss and its Motion to Strike. See State Court Order Denying Motion to Dismiss at 1; State Court Order Denying Motion to Strike at 1. Most importantly, this case does not involve the substantial policy issues that implicate detailed, complex state decisions. See Nat'l Ass'n of Investors Corp. v. BIVIO, Inc., 2013 WL 316021 (D. Colo. 2013); Rienhardt v. Kelly, 164 F.3d 1296, 1303 (10th Cir. 1999)). Instead, it involves the application of established New Mexico law to the particular facts of the case rather than the creation of New Mexico law. A ruling here would not require the state legislative and administrative offices to restructure a complex regulatory regime that took years to create. See Colorado River, 424 U.S. at 819.

Because the factors the Supreme Court enumerated in Colorado River do not strongly counsel against retaining jurisdiction, the doctrine does not require the Court to abstain. See Colorado River, 424 U.S. at 813, 816-18 (noting that whether to decline to exercise jurisdiction pursuant to Colorado River is discretionary); Rienhardt v. Kelly, 164 F.3d at 1303 (stating that the circumstances for deferral under Colorado River are "considerably more limited than the circumstances appropriate for abstention" under the Mhoon factors). Although the Court will decline to exercise jurisdiction over the case under the Brillhart and Mhoon factors, the Court concludes that Colorado River does not require the Court to abstain.

## II.   THE COURT DECLINES TO EXERCISE JURISDICTION OVER NATIONWIDE INSURANCE'S DECLARATORY JUDGMENT.

District courts "possess discretion in determining whether . . . to entertain an action under the Declaratory Judgment Act." Wilton v. Seven Falls Co., 515 U.S. at 282. The Court

concludes it should not exercise jurisdiction over Nationwide Insurance's declaratory judgment because the Supreme Court's and the Tenth Circuit's considerations weigh in favor of declining jurisdiction.   Nationwide Insurance's declaratory judgment involves state law issues pending before a state court between the same parties.   Supreme Court precedent states that "it would be uneconomical as well as vexatious for a federal court to proceed in a declaratory judgment suit where another suit is pending in a state court presenting the same issues, not governed by federal law, between the same parties."   Brillhart v. Excess Ins. Co. of Am., 316 U.S. at 495.

Tenth Circuit case law also suggests that the Court should decline to exercise jurisdiction. The first two Mhoon factors direct district courts to consider: (i) "whether a declaratory action would settle the controversy;" and (ii) "whether it would serve a useful purpose in clarifying the legal relations at issue."   St. Paul Fire and Marine Ins. Co. v. Runyon, 53 F.3d at 1169 (citing Mhoon, 31 F.3d at 983).   The Tenth Circuit emphasized that the purpose of these two questions is to determine whether the controversy could be better resolved in state court.   See City of Las Cruces, 289 F.3d at 1187.   If the Court's ruling on the declaratory action would only partially resolve the parties' dispute, the Tenth Circuit has stated that the state court could better resolve the action.

Here, a ruling that the insurance policy does not cover Christian Gurule's accident would not fully resolve the dispute between the parties.   The Gurules also have a pending state law claim against Nationwide Insurance that is independent of the Gurules' contract claim.   See Tr. at 13:13-16 (Gorman); Motion at 8.   Because the Gurules are litigating other claims in state court, a ruling on Nationwide Insurance's declaratory judgment action will not "settle the controversy."   Mhoon, 31 F.3d at 983.   "Nationwide will still be involved in litigation with the Gurules" on the Gurules' state law claims.   Tr. at 25:7-11 (Gorman).   Moreover, the state court

could fully settle the dispute.  All parties are amenable to service, and "have been served and joined in a single action in the State case."  Motion at 8.  The state case involves solely questions of New Mexico state law, and there are no questions outside of the state court's jurisdiction or expertise.  See Motion at 8.

Finally, although a ruling on Nationwide's Complaint would "clarify[] the legal relations at issue," the state court is farther along in resolving the dispute than the Court.  It has already ruled on Nationwide Insurance's Motion to Dismiss and Motion to Strike.  See State Order Denying Motion to Dismiss at 1; State Order Denying Motion to Strike at 1.  Unlike in other instances, the Fourth Judicial District of New Mexico often moves very quickly and is able to decide issues before the Court can reach them.  See Tr. at 15:21-25 (Court).  The first two Mhoon factors, therefore, indicate that the Court should decline jurisdiction.

The third Mhoon factor also suggests that the Court should not exercise jurisdiction.  The third factor directs federal courts to decline jurisdiction when one party seeks a declaratory remedy "merely for the purpose of 'procedural fencing' or 'to provide an arena for a race to res judicata.'"  St. Paul Fire and Marine Ins. Co. v. Runyon, 53 F.3d at 1169 (quoting Mhoon, 31 F.3d at 983).  Here, Nationwide Insurance asked the Gurules for more time to determine whether the policy covered their claims.  See Nationwide Letter at 1-2; Response at 7-8.  It stated that it would reach a decision by no later than March 27, 2015.  See Nationwide Letter at 1-2.  Nationwide Insurance was aware that the Gurules had already filed a state court action, and that they might join Nationwide Insurance as a defendant if Nationwide denied their claim, because in Nationwide Insurance's federal Complaint, it named as a Defendant Dave Elroy Romero -- the personal representative of Christian Gurule's wrongful death estate.  See Complaint at 1.  Nationwide Insurance could only have obtained Romero's name from viewing the state court

filings.  See Motion at 9; Reply at 3.  Less than three weeks before Nationwide Insurance's deadline to decide the Gurules' claim, it filed this federal action.  Nationwide Insurance did not inform the Gurules that it was denying coverage until after it filed its lawsuit in federal court. See Tr. at 37:16-20 (Biehler, Court)(Court: "So you filed the lawsuit, and then how long was it before you sent the letter [declining coverage]?"  Mr. Biehler: "A couple weeks.").

Nationwide Insurance cites the Court's decision in American National Property and Casualty Co. v. Wood, 2008 WL 2229742 (D.N.M. 2008)(Browning, J.)("ANPAC v. Wood"), to support its contention that the Court should exercise jurisdiction.  Nationwide Insurance's case, however, involves different facts.  First, the insurance-company plaintiff in ANPAC v. Wood filed a complaint for a declaratory judgment in federal court before the claimant-defendant filed any state law complaint.  The insurance company filed its declaratory judgment action on October 17, 2007; the claimant-defendant did not file a complaint in state court until January 22, 2008.  See 2008 WL 2229742, at *1. Moreover, the insurance company did nothing to delay the claimant from filing a state-court action.  See 2008 WL 2229742, at *12 ("There is nothing indicating that ANPAC is attempting to 'provide an arena for a race to res judicata.'").  Here, the Gurules filed a state court action in 2013.  Motion at 2; Gurule v. Nationwide Mutual Ins. Co., D-412-CV-2013-00502, Complaint at 1, filed in state court on December 18, 2013.  Although the Gurules did not amend the state complaint to add Nationwide Insurance as a defendant until after Nationwide Insurance filed the federal Complaint, it was clear that they intended to add Nationwide Insurance if Nationwide Insurance denied their insurance claim.  See Tr. at 17:19-23 (Gorman).  Thus, the only reason Nationwide Insurance filed first was because the Gurules were waiting for it to respond to their claim.  Second, in ANPAC v. Wood, the Court's ruling on the insurance company's declaratory action would fully settle the controversy between the parties.

See 2008 WL 2229742, at * 10.  Here, the parties must also resolve the Gurules' unfair practices claims under New Mexico law.

Unlike in <u>ANPAC v. Wood</u>, where the insurance company fully informed the claimant that it denied coverage, Nationwide Insurance avoided informing the Gurules that it was denying their claim until after it filed its federal Complaint.  <u>See</u> Tr. at 37:16-20 (Biehler, Court).  It deprived the Gurules of the opportunity to amend their complaint before Nationwide Insurance filed by maintaining that Nationwide Insurance would reach a decision on their claim by March 27, 2015.  <u>See</u> Nationwide Letter at 1.  That letter delayed the Gurules from taking any action in state court.  Fully aware of this, Nationwide Insurance filed its federal Complaint before informing the Gurules of their claim's status.  <u>See</u> Tr. at 37:16-20 (Biehler, Court).  The Court does not want to divest foreign parties of the benefits of diversity jurisdiction, <u>see</u> Tr. at 49:23-25, but it should not exercise jurisdiction where the out-of-state party engages in procedural fencing, <u>see</u> <u>St. Paul Fire and Marine Ins. Co. v. Runyon</u>, 53 F.3d at 1169; <u>Mhoon</u>, 31 F.3d at 983.  Retaining jurisdiction over cases merely because the insurance company filed first encourages insurance companies to engage in unfair practices, like delaying claim resolution to gain an advantage in litigation.  Thus, while the Court hesitates to deny foreign corporations the benefits of diversity jurisdiction, it cannot encourage misleading insurance practices.

The Tenth Circuit reached a similar conclusion in <u>St. Paul Fire and Marine Insurance Co. v. Runyon</u>.  <u>See</u> 53 F.3d 1170.  The insured told the insurance-company that he would initiate a state court lawsuit by February 18, 1994, if it did not assume his defense.  <u>See</u> 53 F.3d 1170.  On February 17, 1994, the insurance company filed a diversity action for declaratory judgment in federal court.  The Tenth Circuit held that the evidence supported the district court's conclusion that the insurance company used the declaratory judgment action for procedural fencing.  <u>See</u> 53

F.3d at 1170.  The Tenth Circuit stated that this factor was important in supporting the district court's decision to decline jurisdiction and to defer to the state court forum.  See 53 F.3d at 1170. Nationwide Insurance attempts to distinguish its case because it states that the Gurules did not clearly delineate that they would file suit against Nationwide Insurance by a certain date if Nationwide Insurance denied their claims.  See Response at 9.  Such a clear statement is not required to show procedural fencing.  The Gurules provided a date by which the Plaintiffs agreed to wait for a response to their policy claims.  Moreover, because Nationwide Insurance  knew that the Gurules already filed a state case addressing these claims, state court action was a certainty rather than a mere threat.  Like in St. Paul Fire and Marine Insurance Co. v. Runyon, Nationwide Insurance used the delay period to race the Gurules to court while it induced the Gurules to wait.  This procedural fencing weighs against the Court's exercise of jurisdiction.

The Fourth Mhoon factor directs the Court to examine whether the use of a declaratory action would "increase friction between our federal and state courts and improperly encroach upon state jurisdiction." City of Las Cruces, 289 F.3d at 1187 (quoting Mhoon, 31 F.3d at 983). The Gurules argue that this case creates friction because the Supreme Court of New Mexico has repeatedly emphasized that New Mexico public policy places a heavy burden on insurers to justify excluding individuals from coverage.  See Hartford Ins. Co. v. Cline, 2006-NMSC-033, ¶ 4, 140 N.M. 16; Estep v. State Farm Mut. Automobile Ins. Co., 1985-NMSC-069, ¶ 18, 103 N.M. 105; Romero v. Dairyland Ins. Co., 1990-NMSC-111, ¶ 17, 111 N.M. 154 (concluding that New Mexico law demonstrates a clear "legislative purpose to provide for the inclusion of uninsured motorist coverage in every automobile liability policy unless the insured has knowingly and intelligently waived such coverage").  The Gurules argue that insurance coverage disputes have caused friction between the federal courts and the New Mexico courts in the past.

In Estep v. State Farm Mutual Automobile Insurance Co., the Supreme Court of New Mexico noted its disagreement with the Tenth Circuit's reading of the New Mexico Financial Responsibility Act, both as a matter of law and of public policy.  See 1985-NMSC-069, ¶ 18, 103 N.M. 105 (disagreeing with the Tenth Circuit's holding in Farmers Alliance Mut. Ins. Co. v. Bakke, 619 F.2d 885 (10th Cir. 1980)).

The Court concludes that exercising jurisdiction over a case involving contract interpretation does not, by itself, create friction with state courts.  Although uninsured motorist coverage may be an important issue of public policy, this case does not necessarily require the Court to interpret New Mexico statutes that would affect the scope of insurance coverage in numerous contracts.  See Estep v. State Farm Mutual Automobile Insurance Co., 1985-NMSC-069, ¶ 18.  When combined with additional factors, however, exercising jurisdiction over Nationwide Insurance's declaratory judgment action could create friction with the state courts.

First, this case involves solely state law issues.  See Tr. at 10:8-11 (Gorman).  Second, the case requires more than a simple legal determination.  See Mhoon, 31 F.3d at 984.  In Mhoon, the Tenth Circuit suggested that, when the insurance coverage issue is not "a complicated one," exercising jurisdiction would not cause friction.  There, the federal court's decision "involved only a search of the relevant record."  Mhoon, 31 F.3d at 984.  The Gurules' case is not so simple.  The Court would potentially need to hold a Mark V hearing "with regard to the language of the policy itself, and whether there is ambiguity, and what exactly the language of the policy means."  Tr. at 11:2-4 (Gorman).  See Tr. at 42:3-13 (Biehler, Court)(stating the Court must interpret whether the policy is ambiguous and could potentially hold a "Mark V hearing").  Finally, this case involves the same issues pending before the state court.  The Court has previously found this an important factor in determining whether

exercising jurisdiction would create friction.  See Hartford Fire Ins. Co. v. Gandy Dancer, LLC, 2011 WL 1336523, at *12-13 (D.N.M. March 30, 2011)(concluding that, because the federal action involved contract claims and the state action involved tort claims, there was little friction between federal and state court).  "Because this Court's inquiry will be distinct from the state court's there is no risk that the courts will come to different conclusions about the same matter or that the parties will be estopped from litigating an issue in state court."  Hartford Fire Ins. Co. v. Gandy Dancer, LLC, 2011 WL 1336523, at *12.  In this case, the issues are the same.

Nationwide Insurance concedes that "there is not a great overriding federal interest," except for the fact that Nationwide Insurance is "an out of state insurance company and may not trust the state court."  Tr. at 28:5-11 (Biehler, Court).  The Court acknowledges that enjoying the benefits of diversity jurisdiction is an important federal interest.  Nonetheless, this case involves important issues of public policy requiring interpretation of the same state law issues already pending before a state court.

Importantly, the Fourth Judicial District of New Mexico often moves very quickly and is able to decide issues before the Court can reach them.  See Tr. at 15:21-25 (Court)(discussing how the Second Judicial District of New Mexico is often "swamped with cases" and appreciates the help, but that the Fourth Judicial District moves quickly)(Court); id. at 18:2-7 (stating that "the Fourth Judicial District Court caseload is lighter than some of the other courts in New Mexico," so they have "the time and willingness to hear the case")(Gorman).  The state court has already ruled on: (i) Nationwide Insurance's state court Motion to Dismiss, see State Court Order Denying Motion to Dismiss at 1; and (ii) Nationwide Insurance's Motion to Strike -- which seeks to strike the Gurules' declaratory judgment action requiring the state court to decide the same issues before the Court, see State Order Denying Motion to Strike at 1.  The state court has

demonstrated its willingness and capability to handle the parties' claims quickly and effectively.

The Court also notes that filing an action in federal court before informing policy claimants of their claims' status causes friction with New Mexico law. The New Mexico Insurance Code directs insurance companies to communicate with insureds, to deal with them fairly and honestly, to tell them whether their claim is covered, and if it is not covered, to explain why. See Unfair Insurance Practices Act, NMSA §§ 59A-16-1−59A-16-30 ("TPFA"). If the Court allows insurance companies to avoid informing claimants whether the company covers their claim and instead file a federal lawsuit, it might be allowing them to avoid their state law duties. Again, while the Court does not want to deprive insurance companies of the ability to choose their own forum, it does not want to encourage insurance companies to disregard state statutory obligations and therefore create friction with state courts. Accordingly, the fourth factor weighs against exercising jurisdiction.

Finally, the fifth Mhoon factor instructs the Court to analyze whether an alternative remedy would be more effective. See Mhoon, 31 F.3d at 983. Here, the state court could provide an effective remedy by resolving all of the parties' disputes in the same action. Additionally, the state courts are in the best position to apply and interpret state law. See Houston Gen. Ins. Co. v. Am. Fence Co., 115 F.3d 805, 806 (10th Cir. 1997)(noting that state courts are the ultimate authority on state law interpretation); Travelers Indem. Co. v. Bowling Green Prof'l Assoc., PLC, 495 F.3d 266, 272 (6th Cir. 2007)(stating that state courts "are in the better position to apply and interpret its law on [insurance coverage issues]").

Nationwide Insurance contends that nothing "preclude[s] this Court from exercising jurisdiction." Response at 7. The question, however, is not whether the Court may exercise jurisdiction, but whether it should. The Court emphasizes that it does not decline to exercise

jurisdiction merely because the Gurules filed a parallel action in state court.  This case presents a unique set of facts in which the insurance company avoided informing the Gurules of their claim's status to gain an advantage in litigation.  See Tr. at 37:16-21 (Biehler, Court).  Perhaps most important, the Court cannot keep up with New Mexico's Fourth Judicial District; it is moving more rapidly than the Court.  Because the case also involves substantial state-law issues that have been pending before a state court that is able to reach the issues quicker than the Court can, the Court concludes that it should not exercise jurisdiction.

The Court dismisses rather than stays this action for several reasons.  Courts have noted that issuing a stay is often preferable to dismissing a case "because it assures that the federal action can proceed without risk of a time bar if the state case . . . fails to resolve the matter in controversy."  Wilton v. Seven Falls Co., 515 U.S. at 288 n.2.  See Int'l Ass'n of Entrepreneurs of Am. v. Angoff, 58 F.3d 1266, 1271 (8th Cir. 1995)(noting that a stay is preferable when "further federal proceedings may prove necessary").  Staying a case also seeks to avoid a situation in which the "state court could potentially grant the [defendant's] motions to dismiss" in state court, "leading to different parties in each lawsuit and perhaps creating non-parallel proceedings" between the federal and state courts.  Royal Indem. Co. v. Apex Oil Co., 511 F.3d 788, 797 (8th Cir. 2008).  The situations justifying a stay over a dismissal are not present here. First, the state court has already denied Nationwide Insurance's Motion to Dismiss.  This ensures that the state court will resolve the matter in controversy: whether the policy covers Christian Gurule's accident.  There are no other issues that the Court must decide.  Accordingly, unlike in International Association of Entrepreneurs of America v. Angoff, no further federal proceedings are necessary.  Second, Nationwide Insurance stated at the hearing that the Court should stay the case rather than dismiss it precisely because "the state court case could be dismissed against

Nationwide, and therefore, you'd want to retain jurisdiction if it was dismissed."  Tr. at 51:19-52:6 (Biehler, Court).  Because the state court has already denied Nationwide Insurance's motion to dismiss, the situation does not justify staying the case rather than dismissing it.

The Court emphasizes the limited scope of its ruling, and its hesitation and reluctance. The Court is sensitive to the need of foreign insurance companies to secure declaratory judgment relief in federal court in New Mexico.  The practice of New Mexico plaintiffs' lawyers going to Rio Arriba and San Miguel courts to file lawsuits when the events occurred in Albuquerque is well known and has been criticized.  See Maggie Shepard, NM's Venue Statute Makes Shopping for Juries Legal, ALBUQUERQUE JOURNAL (June 28, 2015), available at http://www.abqjournal.com/605421/news/nms-venue-statute-makes-shopping-for-juries-legal.html (describing the "common practice" in New Mexico of filing "wrongful death lawsuits in Santa Fe and Las Vegas, where attorneys hope juries will award in favor of their clients and give larger verdict amounts").

It is not the role of the federal court sitting in New Mexico to criticize or comment on New Mexico's policy decision to allow or condone venue procedures.  That procedure is a policy decision for the State of New Mexico.  The policy is relevant to this federal case, however, in that, if there is any lingering doubt about the need for diversity jurisdiction, this case may suggest that the need or desirability for federal jurisdiction is every bit as present today as it was at the time the Framers made diversity jurisdiction available in Article III.

Here, no party resides in San Miguel County.  The Gurules live in Penasco, New Mexico -- located in Taos County.  See Complaint ¶ 2, at 1.  Christian was living in Albuquerque while he attended school.  The accident occurred in Albuquerque.  Nationwide Insurance is an Ohio corporation with its principal place of business in Columbus, Ohio.  See Complaint ¶ 1, at 1.  At

first glance, most observers -- courts, lawyers, and the parties -- might think this case should be held in Albuquerque or Bernalillo County.  It will not be litigated in Bernalillo County, but in San Miguel County, where the Gurules filed the state case.  When Nationwide Insurance filed its federal case, it was not a party in the state case.  So by dismissing the case, the Court is declining jurisdiction in favor of a case that not only did not have the issue here, but one that did not have Nationwide Insurance as a party.

The Court is reluctant to foreclose insurance companies a federal forum unless they file in federal court first, particularly where the state case to which it defers does not yet include the same issue.  The reality is that the federal court, with its busy criminal docket, could not keep up with the state's Fourth Judicial District.  As a result, for the Court to start actually litigating the case now puts the federal court in competition and friction with the state court.  It is with reluctance that the Court decides to leave the race, leaving federal insurance companies without a forum of their choosing.  The plaintiffs' bar should be on notice, however, that if the federal court can get to these issues before the state court, the Court is not likely to decline to exercise jurisdiction.  Thus, but for the speed of the state court in this matter, the Court would not likely grant this motion in whole or in part.

**IT IS ORDERED** that: (i) the Defendants C.R. Gurule, Inc., Clyde Gurule, Darlene Gurule, and the Estate of Christian Gurule's Motion for Dismissal or Stay, filed May 19, 2015 (Doc. 4), is granted in whole; and (ii) Nationwide's Complaint for Declaratory Judgment, filed March 9, 2015 (Doc. 1), is dismissed.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

David P Garcia
The Law Firm of David P Garcia PC
Santa Fe, New Mexico

-- and --

Robert D. Gorman
Robert D. Gorman, PA
Albuquerque, New Mexico

      *Attorneys for the Plaintiffs*

Gregory L. Biehler
Beall & Biehler
Albuquerque, New Mexico

      *Attorney for the Defendant*